UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALAMO FORENSIC SERVICES, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No.  SA-20-CV-38-XR |
| | ) | |
| BEXAR COUNTY, TEXAS and JOE D. | ) | |
| GONZALES | ) | |
| | ) | |
| *Defendants.* | ) | |

**ORDER ON MOTION TO DISMISS**

On this date, the Court considered Bexar County and Joe Gonzales's (collectively "Defendants") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (docket no. 5), Plaintiff Alamo Forensic Services, LLC's ("Alamo Forensic") response (docket no. 7), and Defendants' reply (docket no. 13). Additionally, the Court considered Alamo Forensic's motion for leave to file an amended complaint (docket no. 7, with the proposed amended complaint attached as docket no. 12), Defendants' response (docket no. 13), and arguments made in open court on May 13, 2020 (docket no. 19). After careful consideration, Defendants' motion to dismiss (docket no. 5) is GRANTED, and Alamo Forensic's motion for leave to file an amended complaint (docket no. 7) is DENIED.

**BACKGROUND**

As alleged in its original complaint[1], Alamo Forensic is a Texas LLC which provides breath alcohol testing and instrumental calibration services to various Texas law enforcement agencies

---

[1] Here, the Court draws the facts from Alamo Forensic's original complaint. Below, in its discussion of the motion for leave to file an amended complaint, the Court explains the amended or additional facts that Alamo Forensic alleges in its proposed amended complaint.

and governmental entities. Docket no. 1 at 2–3. One of those entities is Defendant Bexar County, Texas ("Bexar County"). Alamo Forensic alleges that it and Bexar County first contracted for breath test services in September 2012. *Id.* at 4. Under that contract, which was renewed each year until 2018, Alamo Forensic provided maintenance of breath-test instruments, labor and parts for repair of those instruments, supervision of breath-test operators for the County, expert testimony on breath tests, clerical support, and training classes. *Id.* In return, Bexar County paid a monthly fee of $12,750. *Id.*

According to the contract, either party could terminate the agreement with thirty days written notice. *Id.* On December 29, 2017—during the latest iteration of the contract—the Director of Bexar County Judicial Support Services, Mike Lozito ("Lozito"), allegedly told Alamo Forensic in writing that the County was not going to renew the contract when the current contract ended on February 1, 2018. *Id.* at 5. Nonetheless, Alamo Forensic claims, Bexar County has continued to request services from Alamo Forensic, and Alamo Forensic has continued to supply those services, even after the contract formally ended. *Id.* But, Alamo Forensic alleges, it has not been paid for those services despite its expectation that Bexar County would still do so. *Id.* It claims that it maintained that expectation "because the usual practice of Bexar County was to pay invoices well after they were due, particularly around the end of the year." *Id.* Further, Debra Stephens ("Stephens"), owner of Alamo Forensic, allegedly spoke with an unnamed county official, the Scientific Director of DPS, who told her to continue providing services because the "contract situation would 'work itself out.'" *Id.* at 5–6. Alamo Forensic claims that Bexar County continues to ask it to provide services and that Alamo Forensic has repeatedly requested payment from the County. *Id.* at 6.

In addition, Alamo Forensic claims that Stephens became concerned about the practices

2

used by Bexar County's new breath-test services contractor, Quality Forensic Toxicology, LLC ("QFT"). *Id.* at 6–7. Stephens filed a complaint on February 2, 2019 with the Office of the Scientific Director of the Texas DPS Breath Alcohol Lab, but a DPS audit found that QFT was in compliance with relevant regulations. *Id.* at 7. Stephens, unsatisfied with that result, sent a letter to the Texas Attorney General and the Bexar County Criminal District Attorney's Office. *Id.* at 7. Alamo Forensic claims that, in response to Stephens' letter, the District Attorney's Office— through Defendant Joe Gonzales, the Criminal District Attorney ("Gonzales")—issued a Memorandum of Disclosure. *Id.* That memo, Alamo Forensic alleges, inaccurately attributed several false statements to Stephens: statements about Bexar County's lack of payment, statements about QFT being subject to government fines, and statements denying knowledge of a court order requiring photographs of Alamo Forensic's lab. *Id.* at 7–8.

## ANALYSIS

### I.      Defendants' Motion to Dismiss the Original Complaint

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* In considering a Rule

3

12(b)(6) motion, the court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

Alamo Forensic's original complaint brought three claims: (1) breach of implied contract, (2) quantum meruit, and (3) a claim pursuant to 42 U.S.C. § 1983, alleging a violation of Stephens's First Amendment rights. Docket no. 1 at 8–11.

   a.  *Breach of Implied Contract and Quantum Meruit*

In response to Defendants' motion to dismiss, Alamo Forensic abandons these claims in its proposed amended complaint. Docket no. 7 at 2. In short, though, both of these claims (brought solely against Bexar County) must be dismissed because Alamo Forensic has not shown that Bexar County has waived its governmental immunity; as such, the Court lacks subject matter jurisdiction. Governmental immunity protects political subdivisions of the state, including counties, from lawsuits. *Ben Bolt-Palito Blanco Consol. ISD v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). Unless the party suing the governmental entity meets its burden of establishing that governmental immunity is waived, the trial court lacks jurisdiction to consider the claim. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). To establish such a waiver of governmental immunity, a plaintiff must either point to an express legislative waiver or a constitutional provision that allows the plaintiff to bring the claim against the governmental unit. *Luttrell v. El Paso Cty.*, 555 S.W.3d 812, 826 (Tex.App.—El Paso 2018, no pet.). After all, it is not this Court's but rather "the Legislature's sole province to waive or abrogate sovereign immunity." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002).

The Texas Local Government Code provides one such legislative waiver, but only when

4

the municipality enters into a "written contract stating the essential terms of the agreement for providing goods or services to the local government entity." TEX. LOC. GOV'T CODE §§ 271.151(2)(A), 271.152. However, § 271.156 explicitly exempts suits in federal court from that waiver. *Id.* § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court."); *see also Olford v. City of Houston*, No. H-17-3421, 2018 WL 3208196, at *8 (S.D. Tex. June 29, 2018) ("The Texas Local Government Code makes it clear that immunity is not waived for breach of contract claims in federal court.").

Alamo Forensic has not shown, or attempted to show, that Bexar County waived its governmental immunity. Even if immunity could be waived under the Texas Local Government Code in federal court, Alamo Forensic has not pled the existence of a written contract, much less one that provides the "essential terms" of the agreement. Indeed, the very basis of these claims arises from the lack of written contract, i.e. the existence of an implied contract. Because such governmental immunity defeats this Court's subject matter jurisdiction, *see Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018), the breach of contract and quantum meruit claims brought in Alamo Forensic's original petition are dismissed.[2]

b. *First Amendment*

Alamo Forensic's First Amendment claim alleges that Bexar County and Gonzales issued the Memorandum of Disclosure after Stephens complained about QFT, one of Alamo Forensic's competitors and current contractor with Bexar County. Alamo Forensic claims that Defendants mischaracterized Stephens's statements in an attempt to attack her and Alamo Forensic's

---

[2] Nor may Alamo Forensic claim that Bexar County waived immunity through its conduct because Texas courts have routinely refused to recognize a waiver-by-conduct exception in breach of contract suits against government entities. *TXU Energy Retail Co. v. Fort Bend Ind. Sch. Dist.*, 472 S.W.3d 462, 467 (Tex.App.— Dallas, 2015) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011)).

professionalism more generally. In stating its claim, Alamo Forensic further asserts that Gonzales was employed by and was acting in the scope of his employment with the District Attorney's office at the time. Defendants' motion asserts myriad reasons to dismiss the First Amendment claim: (1) that the only named plaintiff, Alamo Forensic, lacks standing to assert the rights of Stephens, not a party to the original complaint; (2) Gonzales, acting in his official capacity in issuing the memorandum, is immune from claims for damages under the Eleventh Amendment; (3) Gonzales, as prosecutor, is immune from a § 1983 claim for acts that are within the scope of his prosecutorial duties; (4) the official-capacity suit is barred by governmental immunity; (5) the claim is more accurately described as a defamation claim, and such claims are not actionable under § 1983; and (6) to the extent Alamo Forensic's claim is read as a retaliation claim, such a claim requires pleading the deprivation of some valuable governmental benefit and the absence of a nonretaliatory motive for the alleged adverse action, and Alamo Forensic has failed to do so.

Here, the Court need not reach the merits of the First Amendment claim because in its original complaint, Alamo Forensic —the only named plaintiff—lacks standing to assert the rights of Stephens, not a party to this action. To allege facts sufficient to establish standing, a plaintiff must show: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In addition to those constitutional requirements, the Supreme Court has also established prudential constraints, one of which requires courts to refrain from adjudicating claims that assert the rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975); *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) ("Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government."). However,

6

one exception in which a litigant may assert the rights of a third party is when, in addition to his or her own Article III standing, the litigant also has a close relationship to the third party such that the parties' interests are aligned and there is some "hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

Here, Alamo Forensic lacks standing to assert the First Amendment rights of Debra Stephens. Though the parties have a close relationship with undoubtedly aligned interests, Alamo Forensic pleads nothing from which the Court could infer Stephens is hindered from protecting her own interests. *Id.* The fact that Stephens is added as a plaintiff in the proposed amended complaint makes clear that (1) Alamo Forensic understood from Defendants' motion to dismiss that its standing was doubtful, and (2) the only hindrance to Stephens protecting her own interests was adding her name to this lawsuit. Accordingly, in the original complaint, Alamo Forensic lacks standing to assert the rights of Debra Stephens and the First Amendment claim must be dismissed.[3] Because all three claims in the original complaint are dismissed, the Court must now consider whether to grant leave to Plaintiff to file its proposed amended complaint.

## II.   Alamo Forensic's Motion for Leave to File Amended Complaint

Once the deadline for amending as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave," but the court "should freely grant leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although the rule "evidences a bias in favor of granting leave to amend," *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004), "leave to amend is in no way automatic." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "Denial of leave to amend may be

---

[3] In some scenarios, courts have relaxed third-party standing requirements in First Amendment cases when a plaintiff challenges an overbroad statute. *See, e.g. Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984). That is not at issue in this case because there is no statutory claim.

warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). In other words, a court should review the proposed amended complaint under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Both claims in the proposed amended complaint are brought under 42 U.S.C. § 1983 which provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional or federal statutory rights. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting 42 U.S.C. § 1983). The statute itself creates no substantive rights but instead provides a remedy for deprivations of rights created under federal law. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Id.* (internal quotations omitted). In alleging a claim under § 1983, a plaintiff must plead specific facts demonstrating a constitutional deprivation and may not rest upon conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

A municipality is a "person" subject to suit under § 1983, but the municipality "cannot be held vicariously liable for the constitutional torts of its employees or agents"; rather, "[a] municipality is liable only for acts directly attributable to it through some official action or imprimatur." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Therefore, to establish municipal liability under § 1983, a plaintiff must plead three elements: "(1) an official policy (or

custom) of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

The first element requires the plaintiff to plead an official policy or custom which "can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). To satisfy the second element, a plaintiff must adequately plead the identity of a policymaker with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A municipal employee "may also possess final policymaking authority where the final policymaker has delegated that authority, either expressly or impliedly," but "the discretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Id.* (citing *Valle*, 613 F.3d at 542–43). The third element of municipal liability under § 1983 requires a plaintiff to plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, and such a showing requires a "high threshold of proof." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542.

a. *Due process deprivation of property*

In the proposed amended complaint, Stephens and Alamo Forensic (hereinafter, "Plaintiffs")[4] add a new claim arising out of the same set of facts: both Alamo Forensic and

---

[4] As the Clerk of the Court indicated in its deficiency notice, Debra Stephens is not a named plaintiff because

Stephens allegedly "had property taken from them without compensation in violation of Plaintiffs' due process rights under the 14th Amendment in violation of 42 U.S.C. § 1983." Docket no. 12 at 8. This claim, brought in lieu of the prior breach of contract and quantum meruit claims, is premised on the alleged implied contract between Alamo Forensic and Bexar County, which Plaintiffs claim Bexar County breached by not paying Alamo Forensic pursuant to that implied contract. Defendants counter that because the alleged implied contract would not have been enforceable under state law, it cannot form the basis of a protected property interest. Docket no. 13 at 4–7. Specifically, Defendants argue that the alleged implied contract is unenforceable under state law because (1) any claim to payment under the contract is subject to governmental immunity, and (2) the manner in which the contract was formed does not comply with the Texas Constitution, which vests the Bexar County Commissioner's Court with the authority to bind the County; as such, the unnamed Bexar County employee who told Plaintiffs to continue providing services because the contract would "work itself out" did not have the authority to bind the County.

Under the Due Process Clause of the Fourteenth Amendment, the state must provide constitutionally adequate procedures before depriving an individual of life, liberty, or property. U.S. Const. amend. XIV, § 1. To establish a § 1983 procedural due process claim, a plaintiff must show: (1) that he or she was deprived of a property interest protected by the Fourteenth Amendment, and (2) that the process attendant to the deprivation was constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). An implied contract may provide the source of such a property interest. *See White v. Miss. State Oil and Gas Bd.*, 650 F.2d 540, 543

---

counsel has not yet filed an actual amended complaint. *See* docket no. 10. However, for purposes of analyzing the validity of the proposed amended complaint, which Plaintiff's counsel would presumably file in accordance with the local rules requiring traditional filing when adding a new party, the Court will refer to Alamo Forensic and Stephens together as "Plaintiffs."

(5th Cir. Unit A 1981). Importantly, though, "the sufficiency of the claim of entitlement must be decided by reference to state law," as "no such property interest is created by the Constitution" itself. *Id.* (quoting *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). In other words, the claimed entitlement must be "legally recognized" and enforceable under state law. *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999)).

Plaintiffs here have not adequately pled a violation of the Due Process Clause, and therefore their § 1983 claim must fail because with no underlying constitutional violation or violation of any other federal law—the first element of a § 1983 claim—the claim cannot stand. *Graham*, 490 U.S. at 393–94.[5] At bottom, Plaintiffs' proposed amended complaint fails to show that Plaintiffs had a property interest, the alleged implied contract, that would be enforceable under state law. Plaintiffs' proposed amendment is therefore futile, and leave to amend will not be granted.

First, Bexar County maintains governmental immunity with respect to the implied contract

---

[5] Plaintiffs' amended complaint is unclear as to whether (1) its due process claim is alleged against Gonzales, and (2) if so, whether Gonzales is sued in his individual or official capacity. In fact, the only reference to Gonzales in Plaintiffs' amended petition's due process claim is to say that "The individual Defendant is not entitled to qualified immunity to this claims [sic]." Docket no. 12 at 9. To the extent that Gonzales is sued in his official capacity, such a claim is redundant to the claim against Bexar County and, therefore, must be dismissed, for both the due process and the First Amendment retaliation claims. *See RBIII, L.P. v. City of San Antonio*, No. SA-09-CA-119-XR, 2009 WL 10700440, at *2 (W.D. Tex. June 16, 2009) ("A suit against a government official in his official capacity is a suit against the governmental entity. In cases where the governmental entity itself is a defendant, identical claims against specific officials in their official capacities are redundant and it is appropriate to dismiss them…Courts routinely dismiss official capacity claims as redundant in § 1983 actions.").

Moreover, when a public official is sued under § 1983, a plaintiff must allege "specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). For 12(b)(6) purposes, this heightened pleading framework does not alter the Court's acceptance of a plaintiff's allegations as true, but it does demand specific facts and not merely conclusions. Plaintiffs here fail to plead any facts indicating that Gonzales played any role in either the formation of the alleged implied contract, its termination, or the ensuing months in which Bexar County allegedly requested, and received, services without payment. Plaintiffs' allegations with respect to Gonzales are solely his role in writing the Memorandum of Understanding which forms the basis of Plaintiffs' First Amendment claim, as described below. Such facts are insufficient to support a due process claim, as alleged here, and therefore Gonzales is separately dismissed under Rule 12(b)(6).

that forms the basis of Plaintiffs' due process claim. Such immunity stands for the same reasons described above and is presumably the reason Plaintiffs abandoned the breach of contract and quantum meruit claims in the original complaint. For the same reason those claims fail—namely, governmental immunity—so too must a claim premised on the enforceability of that implied contract also fail. *See* TEX. LOC. GOV'T CODE § 271.151(2)(A), 271.156; *Olford*, 2018 WL 3208196, at *8 ("The Texas Local Government Code makes it clear that immunity is not waived for breach of contract claims in federal court."); *Swinerton*, 233 S.W.3d at 12 ("We conclude that the legislature did not intend to include claims in quantum meruit in the statutory waiver of immunity contained in section 271.152.").

Second, even putting immunity aside, the manner in which the implied contract was formed would not be enforceable under Texas law and, therefore, cannot form the basis of a due process violation. Texas state law vests the power to transact business on behalf of Bexar County with the Bexar County Commissioner's Court. TEX. CONST. art V § 18(b); *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993). Individual officials—like the unnamed county official who allegedly told Stephens to continue providing services because the contract would "work itself out" or those who have continued to request services from Alamo Forensic—"do not have the power to bind the county by their separate action." *Meyers*, 548 S.W.3d at 488–89 (quoting *Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948)). Simply put, when a governmental entity like Bexar County "enters into a contract that violates or fails to conform with the [Texas] Constitution or a statute of the state, the governmental entity is not liable in contract" because "no legally enforceable contract ever existed." *Richmond Printing v. Port of Hous. Auth.*, 996 S.W.2d 220, 224 (Tex.App.— Houston [14th Dist.] 1999).[6]

---

[6] The Court notes that Plaintiffs' proposed amended complaint fails to address the second prong of a due

12

b. *First Amendment retaliation*

In the proposed amended complaint, Plaintiffs modify the original First Amendment claim, this time alleging that both Bexar County and Gonzales retaliated against Stephens and Alamo Forensic in response to complaints Stephens made about Bexar County and its newly hired breath alcohol contractor, QFT. *See* docket no. 12 at 10. Now, Plaintiffs claim that Defendants retaliated against Stephens based on her complaints by not compensating Plaintiffs for their work and by not considering Alamo Forensic as a potential contractor. *Id.* Defendants respond that Gonzales is protected by Eleventh Amendment, governmental, and prosecutorial immunity. Docket no. 13 at 7. And as to the claim against Bexar County, Defendants argue that Plaintiffs have failed to show that Bexar County itself, rather than a mere employee or official, has violated some federally-protected right. *Id.* at 8. Finally, Defendants contend that because the alleged retaliatory actions— the failure to renew the contract and failure to pay for services—predated Stephens's complaints, those actions could not have been retaliatory. *Id.* at 9.

The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "If an official takes adverse actions against someone in retaliation for engaging in protected speech, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may generally bring a First Amendment Claim." *Kokesh v. Curlee*, 422 F. Supp. 3d 1124, 1131 (E.D. La. 2019) (citing *Nieves*, 139 S. Ct. at 1722). A plaintiff must demonstrate a causal link between the government official's "retaliatory animus" and the plaintiff's subsequent injury. *Id.* "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—

---

process claim—the procedures to which they were entitled but deprived of by the County. *Thompson*, 490 U.S. at 460.

the motive must cause the injury." *Id.* (quoting *Nieves*, 139 S. Ct. at 1722).

Plaintiffs claim here must fail because there is no basis by which the Court could find that Plaintiffs' allegedly protected speech caused Bexar County to fail to compensate Plaintiffs for their work or consider them as a potential contractor. The alleged failure to compensate Plaintiffs began in 2018 (docket no. 12 at 5); Stephens made her complaints a year later, beginning in February 2019. The complaints cannot have caused the failure to pay when the failure to pay predated the complaints. Further, to the extent Plaintiffs' retaliation claim is based on the alleged failure to consider Alamo Forensic as a future contractor, *see* docket no. 12 at 10, such an allegation is speculative and hypothetical and thus does not form the basis of a justiciable case or controversy sufficient to confer Article III standing. *Lujan*, 504 U.S. at 560.[7] Because Plaintiffs' proposed amendment to their First Amendment claim is futile, the Court will deny leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Alamo Forensic's original complaint (docket no. 5) is GRANTED, and the motion for leave to file an amended complaint (docket no. 7) is DENIED. The Clerk is DIRECTED to enter a final judgment pursuant to Rule 58 and to close this case.

It is so ORDERED.

SIGNED this 19th day of May, 2020.

---

[7] Alamo Forensic's original complaint proffered that Gonzales issued the Memorandum of Disclosure in retaliation for Stephens's complaint. Docket no. 1 at 9–10. Though the timing in that context is at least plausible, the claim fails for a different reason (in addition to the lack of standing described above): Gonzales was acting within his prosecutorial capacity in issuing the memorandum and, as such, he is immune from liability. *Cook v. Hous. Post*, 616 F.2d 791, 793 (5th Cir. 1980) ("Prosecutors are immune from liability in suits under [§] 1983 for acts that are within the scope of their prosecutorial duties."). Gonzales issued the memorandum pursuant to his duty to disclose potentially exculpatory information to criminal defendants, given that Stephens sometimes served as a witness for the prosecution, and the memorandum raised issues concerning her credibility.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE